This is Ortiz. Counsel? May it please the Court, Deputy Attorney General Michael Keller on behalf of the warden. In Estelle v. McGuire, the Supreme Court set forth the standard for reviewing jury instructions. Under Estelle, all instructions must be considered together, and the ultimate inquiry is whether there is a reasonable likelihood that the jury applied the instructions. Let me ask you a question about this. I was trying to do that with the instructions, and the way I read them was, say I'm on the jury trying to do the job. And the instructions tell me if the defendant did A, B, and C, which he's not charged with, but if he did A, B, and C, even if you're only persuaded by a preponderance of evidence that he did A, B, and C, you can infer that beyond a reasonable doubt, he did D, which is like A, B, and C. That looks to me like the logic of the instructions when I try to read the inference from the prior conduct instruction together with the beyond a reasonable doubt instruction. And I'm having trouble understanding the inference enough to say that it doesn't matter. I'm having trouble squaring it with Winship and its progeny. Well, Your Honor, I think that the important instruction here is that this Caltrick 2.0 and 2.01, which talk about circumstantial evidence in general, because we're talking about the circumstances. I want to say something. I had thought when I was reading these carefully that that, in fact, might pull the two pieces together, the circumstantial evidence instruction, and I hoped that it would. But when I looked at it more carefully, it seems to me to give you a real problem, because it says that it is necessary to establish each predicate fact beyond a reasonable doubt, while the other instruction specifically says not. Right? That's with regards to you're talking about which aspect of 2.01? The circumstantial evidence instruction 2.01 says further, each fact which is essential to complete a set of circumstances to establish a defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstances on which the inference necessarily rests must be proved beyond a reasonable doubt. But in the other instruction, the specific one that applies to this circumstance, the jury was specifically told that the predicate fact doesn't have to be proven beyond a reasonable doubt. Is that right? That's correct, Your Honor. So how can the circumstantial evidence instruction help? Well, it still helps in that after, admittedly, that the instruction dealing with the prior sex offenses, since it's more specific, it would control and it would tell them they only need to find those priors by preponderance of the evidence. But once they've reached that point, now they're told that you're not required to, but you may make an inference. But once you're talking about an inference, it gets back to where it defines circumstantial evidence, which talks about reaching inferences in 2.0. So I think that they would then know that although the first part may not apply, certainly when you're talking about reaching an inference of guilt, they're going to know, since they're given CALJIC 2.90, which very clearly in no uncertain terms says that the reasonable doubt standard that everyone knows. But they wouldn't just say to themselves, this whole set of instructions about circumstantial evidence must just not apply because the – we know that at least one big aspect of it doesn't apply. I don't think they would because it's an instruction dealing with inferences. I mean, what – there's nothing in the instruction dealing with the prior sex offenses that says CALJIC 2.90 doesn't apply. It doesn't say that this is an exception to the reasonable doubt standard that everyone knows that we've been applying for so many years. So I think that when you look at things in the totality, you've got CALJIC 2.90, which tells them that it's beyond a reasonable doubt. You've got the 2.0 and 2.01, which are telling the jury that if you're going to reach an inference of guilt based on the circumstance, then that circumstance has to be the only rational conclusion is of guilt. And so I think that when they look at this other instruction, they're going to put the – put all three, really, instructions together and understand that they need the reasonable doubt standard to apply and that it doesn't lower the prosecution's burden of proof. And I think that this is where the AEDPA comes into play because it might be that some courts might view the instructions as you've … And in fact, many California courts do. Some have. In a number of those, or in at least one, if not several of those, 2.01 wasn't given. For example, the Oriano case, and it was distinguished by the court of appeal and I think it's the Jeffries case, they pointed out that in Oriano there was no 2.01. But aside from that point, yeah, there is a – there was a split amongst the California courts with regards to this instruction. But this is exactly what shows that reasonable minds could differ on something like this as to whether or not it lowered the prosecution's burden of proof. Several courts have looked at it and said it did, and several looked at it and said it didn't. So that's sort of the definition, or that's what shows us that there's – it's reasonable to reach either kind of a conclusion. And in fact, I sent a 28-J letter to the court advising the court that just after briefing in the Schroeder v. Lewis case, which came out of the Northern District, the court looked at the very instruction that we have here in this case and indeed found that it didn't lower the burden of proof. As in this case, in the Schroeder case, the court noted that Calgic 2.90 and 2.01 were given, and it considered the instruction that we have in this case and found that the burden of proof hadn't been lowered. And I would submit that both that decision as well as the decisions from a number of intermediate court of appeal cases in California came out with a reasonable – that that was a reasonable determination. Is there – there's – it's undisputed, right, that the jury was instructed in accord with excerpts of record, and it says page 38 at the bottom of the page and then 37 in handwriting on the right side? That they received all the written instructions, Your Honor? That they received this instruction. That's my understanding, yes, Your Honor. Okay. Thanks. Help me again with the logic. I never did get a clear answer to that. If you find there's a 55 percent chance that a person did A or B or C, let's say 55 percent is preponderance and 95 percent is beyond a reasonable doubt, how can that support the inference that there's a 95 percent chance that the person did D? Well, that wouldn't by itself be sufficient to draw such a conclusion. But sometimes there may be a set of circumstances that when you piece all of the circumstances together, they combine. But doesn't the instruction allow the jury to draw the conclusion from the prior acts and nothing else? I don't believe it does, Your Honor. I don't think it says that that, especially when you consider it in light of 2.01. I thought it did. What I was looking at was page, excerpts of record page 85. If you find that the defendant had this disposition, you may but are not required to infer that he was likely to commit and did commit the crimes for which he's accused. I thought that meant that they could draw the inference from that alone. Provided that it met the test for reaching, for drawing inferences in general, which is what they're given in 2.00 and 2.01, which tells them you can only draw an inference of guilt if that's the only rational conclusion that can be drawn. Help me on a little detail here. I always have trouble with California cases because they don't give the trial judges enough secretaries. And I can never tell exactly what the jury got. It looks as though the lawyers submit Xeroxes or copies of form instructions. The judge marks them up, and then the judge reads the instructions. And I feel like what I ought to be reading is what the judge reads. I ought to be reading the transcript. Is that right? I gave you, I think, as well, Your Honor. I think we've got both. Yeah, I gave you what the oral advisements were from the court. I included those in the extracts of record as well. Am I right on what the process is there? That's correct. The Alaska, the custom's different. The judge writes them all out and gives the jury 12 copies, one for each juror. And we have the actual written instructions that the judge handed out in the record. But that's not how it works, right? The jury is given a copy of the written instructions. Will they get the markup, too? They may not. I think it depends from court to court. But they may not get the exact one that you're seeing here, but what they're getting is a cleaned-up, typed-out version of it. They do get a cleaned-up type. They do get it. Some California judges have told me they don't get secretaries for that, so they can't produce that. Counsel, I don't think you can make that representation, that in all California trial courts, a copy of the jury instructions are given to the jury. I don't think that's true. Yeah. That's why I said from court to court. I think there's some variation. But in many cases, there are written instructions given. I didn't mean to say that. They do that uniformly in Federal court in California. Yeah. I don't know that anything's uniformly done in every case. Right. So you can't be sure. Yeah. I don't know for sure what they do in every case, but I know that in many cases they get the written instructions as well as the oral. Right. Where we're safe is looking at the transcript. Pardon me? Where we know we're safe is looking at the transcript of what the judge did orally. That tells us what he orally told them, yes. And if there were written instructions, they'll say the same thing. They should. I mean, there's cases where sometimes the court has misread the instructions. I mean, but, yeah, he reads the instructions, yeah. In this case, was the jury given these marked-up instructions or a clean set or any set? I'm not aware of exactly what instructions were given to the jury in the deliberation. Okay. Sorry to take so much of your time with that. Do you know offhand where in the transcript the instruction about the preponderance of the evidence is? As opposed to in the written? In the written. As opposed to in the written. Let's see. I don't have it offhand, but. Why don't you look for it when you reserve some time? Okay, yeah. No, it's in the rebuttal. That's why I asked that whole line of questions. Yeah, unless there are any questions, I'd submit or I'd reserve the remainder of my time. Thank you, counsel. Good afternoon, Your Honor. Ralph Goldson for the appellee and Petitioner. This case involves a conflicting instruction, so I think the real issue is Estelle v. McGuire is concerned with ambiguous instructions. Does the term ambiguous encompass conflicting instructions? Can you help us on what the jury actually got? I was reading the oral instructions and I couldn't find the preponderance instruction, and I thought, gee, I must have missed it. I'll check again later. And after the case is all submitted and, you know, it's right there in black and white at ER 38, and I don't find it at ER 85, and I'm all confused. It's on 86, but it's kind of confusing. Well, my practice as an appellate attorney is to compare the transcript with the reporter's transcript. I see. It's at 86. So I don't think there's a question. Your practice is what? My practice is to compare the clerk's transcript containing the written instructions with the reporter's transcript containing what the judge actually said. And if there was a lack of correspondence, I would – I believe I would note that. So I don't think that's really a problem in this case. Okay. So were you about to argue that we should be analyzing this under a structural error analysis as opposed to Estelle v. McGuire? Yes, I am. All right. So why don't you explain why that's the case and why that makes the California Court of Appeal decision unreasonably incorrect? Well, let me just say that the district court analyzed it both as a contrary to and unreasonable application of. And I think that both are good analyses, so either one suffices to support the district court judgment. But the contrary to clause, I believe, comes in because Estelle v. McGuire is specifically directed to ambiguous instructions. And in Francis v. Franklin, in one of the quotes that's in the brief of appellee, the court talks about irreconcilable conflicts in the instructions. I think those are two different circumstances. Certainly you could characterize any conflict in the instructions as an ambiguity because they point in two different directions. But the district court here was concerned with the fact that if you take 2.50 and 2.50.1 in isolation, they're facially wrong. They are facially wrong and a direct violation of Winship and Sullivan. So what does contrary to mean? Well, perhaps there's a degree of contrariness that merges somewhere into unreasonableness. But by analogy, the United States Supreme Court has recently said that State courts can't really apply the Eighth Amendment unreasonably because it's such a mushy amendment in Lockyer v. Andrade that every offender, every person who steals a slice of pizza with two prior violent felonies has to be judged on the individual facts of that case.  And we have the Winship decision saying that in every criminal case in every State, no matter what the charges are, no matter who the defendant is, no matter what the facts are, has to have a reasonable doubt instruction. Kagan. They were given a reasonable doubt instruction. They were also given this other instruction. They were. They were also given the circumstantial evidence instruction. And my question is, why isn't the circumstantial evidence instruction a bridge between the sexual conduct, misconduct instruction and the reasonable doubt instruction? Because we're dealing here not with a reasonable judge looking at this case in retrospect, but a reasonable juror standard. And I think the best analogy I can give there is that when jurors look at instructions as opposed to judges in retrospect, jurors are like tourists from Peoria at a traffic circle outside of Boston or a major intersection in downtown Los Angeles. There's a welter of signs. Some of them say Chinatown this way. Some of them say museum this way. But the average tourist from Peoria doesn't have the sophistication to fathom those, and in very many cases they get lost. This is just a fact of life. I wonder if you even need to go as far as the tourists from Peoria. I'm thinking of the traditional canon of construction that the specific overcomes the general. It's applied to statutes. And the reason that it is is it's just how intelligent people read or listen. And where the judge says within the meaning of the preceding instruction, the prosecution has a burden of proving by a preponderance of evidence, I was thinking that would just tell me if I was a juror this is an exception to the general BRD rule. Yes, and to be given precedence over it. Yes, I agree. BRD rule applies generally, but if the guy has done this kind of thing before, he doesn't get the BRD rule. I agree. I think what you're trying to say is that the rules of statutory construction are logical in their origin rather than legislative, judicial, whatever. They're just a matter of the way human beings are treated. I think they're about the English language rather than being something esoteric. Well, I mean, you have the language in this case that says that you may infer that he did commit. Is the jury going to draw the distinction between infer that he did commit and find that he's guilty or convict him? I mean, those are all just. Is there a distinction? No, not in my mind, and I'm a lawyer. I think the lay juror would take did commit to mean if you find this, you can convict. That's just a logical way of looking at it. Now, one thing I also wanted to address that was mentioned during argument is that the concept that if there's a split of state authority where some courts have gone this way and some have gone another and even some federal district courts have gone this way, does that demonstrate that reasonable minds could differ? I don't think that that's really what it means because how can we be sure that the courts that went one way on something were being reasonable about it? I mean, that presupposes that there shouldn't be judicial review of those, and yet that's why we're here. I think reasonableness under AEDPA means has the state court not only articulated reasons for its decisions, but in this case, are those reasons supported by the record? They're not. And the district court made very, very clear findings that many of the things that the state court of appeal said just aren't borne out by the record. They're just not true. So that's the standard of reasonableness. I don't think this Court needs to look at what other judges have done as an indication that reasonable minds could differ. Unless there are other questions, I have nothing further. Looks like there aren't. Thank you, counsel. As to the oral advisement, I did go back and double-check it, and it's actually line 13 of 84 through Excerpt to Record 85, line 9. The one that begins right after that and is found also in 85 and 86 is the one dealing with domestic violence that was given also. As far as the contrary to language, a state court decision is contrary to Supreme Court authority if it applies a contradictory rule of law or reaches a different decision when confronted with materially indistinguishable facts. And that's not what we have in this case, because we don't have the state court, for example, applying the laws that says that it's okay if the prosecution lowers the burden of proof, and we don't have materially indistinguishable facts from all of it. In that case, the burden of proof instruction that was given was just plain wrong. In this case, they gave the correct one. They gave 2.90. And 2.90 didn't say that there was any exception to it. And the ---- But why doesn't this language within the meaning of the preceding instruction at Excerpts of Record 86 mean this is an exception to it? Well ---- If you think the guy has probably beat his wife before, that's enough for you to infer that he did it this time. Yes. And that would go back to Your Honor's question about the specific taking precedence over the general. And I would say that what we have is that it, first of all, it doesn't say that it is an exception to the beyond a reasonable doubt standard. And the second thing I would say is that they're given an instruction that talks about circumstantial evidence in general. And so there may be ---- Well, I'm not sure that I can go with you on that. I've got an instruction there that says the government has the burden of proving every element of the crime beyond a reasonable doubt. And I've got an instruction there that says the government has the burden of proving the material matters and circumstantial ---- circumstantial evidence beyond a reasonable doubt. And then I've got an instruction that says within the meaning of the instruction about past offenses of domestic violence, the government has the burden of proving them by a preponderance of evidence. And I don't feel all that confused by it. I feel like it just tells me in plain language that a reasonable doubt for a reasonable price, as public defenders like to say, just doesn't apply to past domestic violence. Well, I think that it does apply only because it fits in what I was going to say, Your Honor, is that there are many different types of circumstantial evidence. You might have to fight ---- How does it apply under this instruction? Tell me the logic. I'm thinking I read this instruction, and I think the guy probably committed a prior offense of domestic violence three times that were not charged. I only think he probably did it. I'm not so confident as to say beyond a reasonable doubt that he did it. And I'm told that that's enough for me to think that he did it, because I'm specifically told here that the prosecutor's burden is only to prove the past occurrences by a preponderance of evidence. And then the judge tells me I can infer from that alone that he did commit the crime that he's now accused of.  Well, when it talks about you can draw an inference, then that refers them back to the instructions that deal with inferences in general, which is 2.01, right? 2.01. Which has one paragraph that says it cannot be reconciled with any other rational conclusions, and further, HBAC, what I read you before. Now, how is any juror supposed to say to themselves that paragraph 1 applies and paragraph 2 doesn't? Well, you know, it may be, it's certainly that this instruction. It's a more usual, more likely inference by far than one that Judge Kleinfeld has been discussing, i.e., this set of instructions about the prior sexual misconduct are by themselves. They don't, nothing else pertains to them. But then that would, when there's no instruction, and there's no, nothing in there  I doubt. And actually there is. It says, within the meaning of the preceding instruction, which seems to be saying this is a world of its own. Well, I just don't see that as creating exception. I don't know that the State would have, it may be certainly advisable, but I think that when they give other instructions that deal with types of circumstantial evidence, be it flight or anything else, they, maybe it would be advisable to say that you can't convict on flight alone or whatever, but that is a particular type of circumstantial evidence. And the jury Doesn't give this instruction anymore, right? What's that? This instruction is no longer given in California courts. It's since been modified. That's correct, Your Honor. And I think that there's a number of different types of circumstantial evidence that could be given, in particular, circumstantial evidence instructions. And I think once they see that they're talking about an inference, that's what pulls them back into the instructions that tell them how to deal with inferences. I mean, frankly, I was convinced by your argument until I went back and read the whole of the circumstantial evidence instruction. I think without that other paragraph, it might well fill the hole that you have. But with it, I just don't see it. Well, and I can understand that some people might not see that, but I would nevertheless submit that under the AEDPA, that it would be reasonable for some judges may feel that 2.01 doesn't fill that gap. And I can understand that position, but there's also a number of judges that have looked at it and said 2.01 does fill the gap. Has anybody noticed this other paragraph that I've been focusing on? Has anybody who said that taken account of the paragraph that immediately succeeds the one that you're talking about? It would be hard for me to know whether they've taken account of it. They haven't discussed that particular paragraph in the opinion.  That someone said that, right. No. And you didn't quote in your brief this further paragraph. Oh, quote the paragraph. No. My impression is that the circumstantial evidence paragraph is not so much focused on the nature of inference as it is the nature of circumstantial evidence. And it then is very specific that the beyond a reasonable doubt standard applies. And the domestic violence paragraph is focused specifically on the inference that can be drawn and also the standard of proof. So I just don't understand how the circumstantial evidence paragraph can cure it. You've got, they say two different things. And there's only one way to read them together that I can see. And that is circumstantial evidence generally beyond a reasonable doubt standard. Evidence of past domestic violence, preponderance of evidence standard. It's a fair way to read them. It's not a conflict. It's just specific overcoming the general. And I don't see how else to read them. The way that I would read it is that there's two different types of evidence out there. There's direct evidence and there's circumstantial evidence. And with circumstantial evidence, we have a specific test. And that test says that you can only find guilt under 2.0 and 2.01 under this way. And then any other types of evidence that fit into that and any other instructions dealing with circumstantial evidence are subject to the requirements that are set forth in 2.0 and 2.01. And for this one, because this one is not subject to the reasonable doubt predicate act standard that's in that instruction. With respect to the first paragraph. I'm going to ask you to restate it because I'm sure I share a feeling that this is a very bad man. And I'd love to keep him locked up, but I'm just not getting it. Say it again in different words. Maybe I'll get it. The evidence can come in two forms. And they get up front, they're told they're beyond a reasonable doubt standard. And that's what applies. It doesn't say only if it's direct evidence or anything like that. It says in no uncertain terms, this is the standard of proof in a criminal case. Period. Okay. The question is, does some other instruction that's at issue in this case, does that create an exception? Well, it doesn't say it does. It doesn't say that, forget about the beyond a reasonable doubt standard. It talks about drawing an inference. Well, the jury is told about inferences and how to deal with inferences. It's told about how to deal with inferences in 2.0 and 2.01. And while there may be one paragraph of that that is different when talking about prior uncharged conduct, the other paragraph, which talks about how to deal with inferences in drawing inferences of guilt, applies. And it applies not to just this type of circumstantial evidence, but it would apply to any other type of circumstantial evidence that the jury might receive in the case. It would have been better if someone would have explained that to the jury, which they do now. Right? I think that the modification was a good idea. But I would still submit that it's something that reasonable courts could look at this and say that 2.0 and 2.01 cured it and that it is not reasonably, that it wouldn't be unreasonable for a court to say that it's not reasonably likely the jury thought the prosecution, that their standard of proof was less. But the California Court of Appeals didn't rely on the circumstantial evidence standard instruction either, did it? It didn't. My recollection is it didn't specifically cite 2.01, but it did cite Estelle, which is the controlling authority, and it did find that considering the instructions as a whole, it wasn't reasonably likely that the jury thought that there was a lesser burden of proof in this case. Thank you, counsel. Thank you. Gibson v. Ortiz is submitted. We are adjourned until 9 tomorrow morning. All rise. This court for this session is adjourned. Thank you. Thank you.
judges: Kleinfeld, Wardlaw, Berzon